**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| HOMER L. GIARD and MARY GIARD, <br><br> Plaintiffs, <br><br> vs. <br><br> BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY, <br><br> Defendant. | CV- 12-113-BLG-SEH-CSO <br><br> **ORDER and FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Homer L. Giard ("Giard") claims that Defendant Burlington Northern Santa Fe Railway Company ("BNSF") negligently mismanaged his return to work following a medical leave of absence. *Cmplt (ECF 4)*[1].  The following motions are pending:

1.    BNSF's Motion for Summary Judgment *(ECF 30)*; and

2.    Giard's Motion to Strike *(ECF 37)* certain affidavits submitted by BNSF in support of its summary judgment motion.

---

[1]"ECF" refers to the document as numbered in the Court's Electronic Case Files.  *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

Having considered the parties' arguments and submissions, the Court first addresses the motion to strike, followed by discussion of the motion for summary judgment.

## I.    <u>BACKGROUND</u>

Giard is a long-time BNSF employee.  In 1995, while working as a non-exempt laborer for BNSF, Giard sustained a serious shoulder injury on the job.  Dr. Gregory S. Tierney ("Dr. Tierney") performed surgery on Giard's shoulder in April of 1997.  *Depo Tierney (ECF 40-2) at 3.*  Following a period of recovery, Dr. Tierney indicated that Giard could return to work in a "light duty capacity," with the following work activity restrictions: no overhead work, no repetitive push/pull, no heaving lifting, repetitive lifting restricted to no greater than 10 lbs, and no lifting greater than 25 lbs.  *Tierney letter dated August 12, 1997 (ECF 32-3).*   Dr. Tierney indicated that these restrictions "will likely be permanent."  *Id.*

In October 1996, Giard brought a Federal Employers' Liability Act ("FELA") lawsuit against BNSF based on this shoulder injury.  This suit settled the following year, with Giard agreeing to accept $250,000 to dismiss his claim.  *Settlement Agreement (ECF 32-5).*  The settlement

agreement provided that Giard could not return to his previously held job as gang foreman due to the restrictions imposed by Dr. Tierney. *Id.* BNSF instead agreed to offer Giard an exempt position as an assistant roadmaster, and further agreed that Giard could reinstate his FELA claim, without regard to the statute of limitations, should he lose this position for any reason. *Id.; Cmplt (ECF 4) at ¶ 8.*

On May 19, 2009, while working as an exempt roadmaster for BNSF, Giard severely injured his left biceps tendon while lifting switch point tips into the back of a BNSF vehicle. *Cmplt (ECF 4) at ¶ 13.* The injury required surgery and caused Giard to leave work for a period of time. *Giard's Stmt Disputed Facts (ECF 40) at ¶ 2; ECF 4 at ¶ 13.*

As an exempt BNSF employee, Giard received employer-paid disability benefits following the May 19, 2009 injury. *Aff. Nancy B. Ahern (ECF 32-7) at ¶ 3.* He received short-term disability benefits from June 20, 2009, to December 4, 2009, and long-term benefits from November 18, 2009, to March 8, 2011. *Id. at ¶ 4.*

On June 24, 2011, Giard filed a second FELA lawsuit against BNSF in state court seeking damages arising from the May 19, 2009 injury. *FELA Cmplt (ECF 32-1).* Giard sought "all damages to which

he is entitled under Montana law and the FELA," *(ECF 32-1 at 3)* and specifically sought "lost wages, earnings, and/or benefits by virtue of the biceps tendon injury of May 19, 2009." *Pltf's Response to Request for Admission No. 8 (ECF 32-8) at 2.*

Giard filed a motion in the FELA case arguing that the disability benefits he received from BNSF were a collateral source and should not offset a verdict rendered in his favor. *See Order Re: Plaintiff's First Motion in Limine (ECF 32-9) at 2.* On January 10, 2013, the state district court disagreed in part, and ruled that the long-term disability benefits did constitute an offset and would reduce any judgment Giard received at trial. *ECF 32-9 at 7.* On May 17, 2013, Giard filed an "Unopposed Notice of Dismissal, Without Prejudice" of his FELA case, explaining that the basis of the dismissal was that "the Court's determination of the offset issues...has rendered the continuation of this suit untenable." *ECF 32-10.*

Dr. Tierney saw Giard on May 4, 2010, for a follow up visit on his surgically-repaired biceps tendon. *Tierney Progress Note (ECF 32-11); Depo. Tierney (ECF 32-20) at 3.* Dr. Tierney indicated in the initial progress note that Giard "really has not shown any real change since

[we] last saw him[,]" but nonetheless referred Giard for a functional capacity evaluation. *ECF 32-11.* Following the functional capacity evaluation, Dr. Tierney evaluated Giard and indicated in a subsequent progress note that Giard was "able to do more than I think he should be able to do." *ECF 32-12.* Dr. Tierney expressed concern over "the significant nature of that elbow injury" in conjunction with the recently repaired left biceps tendon, and "that if he were to reinjure this, he would [not] have any significant function left in that arm for flexion and supination strength." *Id.* He also stated that "if [Giard] does return to work, it should be in some form of a supervisory capacity. I do not think he should do any type of repetitive push/pull or lifting with that arm. Certainly, another option would be early retirement. I would be in favor of that as well." *Id.*

In 2010, Giard requested a return to work in his craft as a non-exempt foreman, a position he preferred over the exempt roadmaster position he held at the time of the 2009 biceps injury. *See Depo. Giard (ECF 40-4) at 4.* Dr. Sharon Clark in BNSF's medical department handled Giard's request to return to work. *ECF 32 at ¶ 15; OPUS note by Dr. Clark (ECF 32-15).* On July 30, 2010, after reviewing Giard's

medical file and information submitted by Giard, Dr. Clark issued a letter to Giard indicating that his existing work restrictions imposed by Dr. Tierney in 1997 remained in effect.  *See ECF 32-16.*

Giard returned to Dr. Tierney in August 2010 to discuss whether Dr. Tierney could remove the 1997 shoulder restrictions.  *ECF 32-20 at 3.*  After what he described as a "relatively brief" exam, Dr. Tierney lifted the 1997 shoulder restrictions.  *ECF 32-20 at 3-4.*  He thereafter issued a prescription pad note to Giard that stated: "no restriction on L shoulder[.]" *See Note Dated August 24, 2010 (ECF 32-13).*

Giard submitted Dr. Tierney's prescription note and other medical information to BNSF's medical department.  *See Long Term Absence Review (ECF 32-15).*  In a case note, Dr. Clark indicated "I don't have any problems with the left shoulder, but do have problems with the status of the distal portions of his forearm muscles - which are not the shoulder." *ECF 32-15.*  Based in part on concerns of Giard's risk of re-injury, Dr. Clark concluded that the same work restrictions should remain in place, and notified Giard of her conclusion by letter dated September 2, 2010.  *See ECF 32-17.*

On October 17, 2011, Giard again returned to Dr. Tierney and

asked him to remove the restrictions on his left biceps. *See Progress Note (ECF 32-18)*. After a physical exam, Dr. Tierney indicated that Giard "has obvious deformity of the biceps but he has absolutely no strength deficit at all." *Id*. Dr. Tierney then removed all work restrictions and indicated that Giard "can be released to full duty without any difficulty." *Id*. Giard's counsel sent a copy of Dr. Tierney's October 17, 2011 progress note to BNSF's counsel on October 20, 2011. *ECF 32-18*.

On March 27, 2012, BNSF approved Giard's return to work with no restrictions, and Giard returned to work in April 2012. *Fitness for Duty Recommendation (ECF 32-21); ECF 4 at 4*. On July 19, 2012, Giard filed this case in state court, stating his cause of action under MCA § 39-2-703 and seeking damages for BNSF's alleged mismanagement of his return to work following his 2009 biceps injury. *See ECF 4*. BNSF removed the case on September 4, 2012, invoking this Court's diversity jurisdiction. *ECF 1*.

## II. <u>GIARD'S MOTION TO STRIKE</u>

### A. <u>Parties' Arguments</u>

Giard moves to strike two affidavits supporting BNSF's pending

motion for summary judgment – the affidavit of William A. Osborn *(ECF 32-2)*, along with the attachments thereto, and the affidavit of Dr. Michael R. Jarrard *(ECF 32-14)* – on the basis that BNSF failed to disclose the identities of these witnesses and documents prior to filing its motion for summary judgment. *Pltf's Br. in Support of Mot. to Strike (ECF 38) at 1-2.* Giard contends these affidavits should be stricken pursuant to Rule 37(c), Fed. R. Civ. P.

Giard argues: (1) BNSF did not disclose these witnesses' identities, nor the attached documents, in its initial disclosures, responses to Giard's discovery requests, or expert disclosures; (2) BNSF represented in its preliminary pretrial statement and discovery responses that its thirteenth affirmative defense (alleging federal preemption) was primarily asserted to avoid waiving it; (3) BNSF did not supplement its discovery responses to disclose the identity of these witnesses or documents until two weeks after it filed its motion for summary judgment; and (4) Dr. Sharon Clark, BNSF employee who performed Giard's fitness-for-duty review, was deposed and expressly denied relying on any documents such as the CBA in performing her review. Giard alleges that BNSF "was hiding the evidence which it

knew it would use to support" its preemption defense, and that "Plaintiffs have been misled and deprived of the ability to explore this information or to perform any discovery on what BNSF now claims is evidence that is dispositive of Plaintiffs' claims." *Id. at 8.*

BNSF responds that it made a timely disclosure because it "provided Giard the information when it became aware that Mr. Osborn, Dr. Jarrard, and the Collective Bargaining Agreement were relevant to BNSF's preemption defense." *Deft's Br. in Response to Mot. to Strike (ECF 41) at 2.* BNSF argues that its counsel first learned of the Collective Bargaining Agreement ("CBA") and its relevance to the RLA preemption defense "when BNSF's counsel discussed the FELA preemption issue with BNSF in late June 2013." *Id. at 3.*

BNSF also argues that even if the disclosures were untimely, the evidence should not be excluded because the timing of the disclosures were substantially justified and harmless. *Id. at 5-8.* As to substantial justification, BNSF argues that it disclosed the information as soon as its counsel knew of its relevance. As to harmlessness, BNSF argues that Giard has not requested depositions of Mr. Osborn or Dr. Jarrard, despite the fact that both parties have agreed to schedule depositions

after the discovery deadline, and the timing of BNSF's disclosures have not and will not result in any material delay in this litigation.

BNSF suggests that the Court should consider sanctions less drastic than exclusion of the evidence. BNSF suggests that the Court could stay its disposition of BNSF's motion for summary judgment pursuant to Rule 56(d) so Giard can depose Mr. Osborn and Dr. Jarrard, and allow Giard to supplement his response to the motion. *Id. at 8.* BNSF points out that Giard has not sought to invoke Rule 56(d), and argues that it is instead his "tactical choice" to seek exclusion of the evidence. *Id. at 8-9.*

Giard argues that BNSF's late disclosure was not substantially justified because the knowledge possessed by Mr. Osborn and Dr. Jarrard, both high-ranking BNSF managerial employees, is imputed to BNSF and BNSF is a party to the CBA. *Pltf's Reply Br. in Support of Mot. to Strike (ECF 43) at 2-4.* Giard argues that BNSF therefore knew of this information and was required to provide it in its initial disclosures, without regard to when its counsel was actually aware of the information. *Id. at 4.* Giard also argues that BNSF has made the same RLA preemption argument using the same CBA many times in

the past, which further demonstrates that its late disclosure here was not substantially justified.  *Id. at 6.* Finally, Giard argues that BNSF's late disclosure changes the complexion of the case late in the process, and will require an entire new line of discovery.  *Id. at 8.*

### B.    <u>Applicable Law</u>

Rule 26(a)(1)(A)(I) provides that a party must disclose to other parties:

> the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses[.]

Rule 26(a)(1)(A)(I).  "A party must make its initial disclosures based on information then reasonably available to it.  A party is not excused from making its disclosures because it has not fully investigated the case..."  Rule 26(a)(1)(E).

If not initially disclosed under Rule 26(a), Rule 26(e) requires that a party:

> supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

The duty to "supplement or correct" a discovery response "in a timely manner" is intended "to prevent unfair and prejudicial surprise, not to facilitate last-minute production of evidence." *William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe*, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1258 (2011) (citing *ATD Corp. v. Lydall*, 159 F.3d 534, 550-51 (Fed. Cir. 1998) (excluding patent evidence first disclosed long after close of discovery)).

Rule 37(c)(1) gives teeth to these disclosure requirements by providing:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion ... unless the failure was substantially justified or is harmless.

*See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (applying rule in Rule 26(a) violation context) (quoting *Yeti by Molly Ltd.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).  The rule permits various remedies, including exclusion of evidence, payment of expenses and fees, or "other appropriate sanctions."  Rule 37(c)(1).  The rule "is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure."  *Goodman*, 644 F.3d at 827 (citing *Yeti by Molly*, 259 F.3d at 1106 and Rule 37 advisory committee's note

(1993)).  Because the rule is "self-executing," a Rule 37(c) sanction does not require that a litigant first move to compel.  *Schwarzer, et al.*, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:2341 (2011).

Sanctions are warranted unless the noncompliance with Rule 26(e) was "substantially justified" or "harmless."  Rule 37(c)(1); *Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (citing *Yeti by Molly*, 259 F.3d at 1106).  Factors to consider in determining whether failure to timely supplement a discovery response is substantially justified or harmless are: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."  *Durham v. County of Maui*, 2011 WL 2532690, at *4 (D. Haw. 2011) (quoting *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) (unpublished) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)); *Transbay Auto Serv., Inc. v. Chevron U.S.A. Inc.*, 2010 WL 4591596, at *7 (N.D. Cal. 2010).  The party facing sanctions bears the burden of proving substantial justification or harmlessness.  *Goodman*, 644 F.3d at 827

(citing *Yeti by Molly*, 259 F.3d at 1106); *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 781 (6th Cir. 2003).

## B. <u>Discussion</u>

The Court first concludes that the disclosures clearly were untimely. Although both witnesses are managerial BNSF employees, they were not identified in initial disclosures, nor in expert disclosures, nor in response to proper discovery requests. Nor were timely supplements served prior to the discovery deadline set by the Court. *See ECF 21, 18.* The motion to strike should be granted, therefore, and the witnesses and exhibits excluded from consideration in connection with BNSF's summary judgment motion, unless BNSF has demonstrated that the failure to timely disclose was substantially justified or harmless.

BNSF argues that the untimely disclosures are justified because BNSF employees and BNSF counsel did not communicate about these issues until "late June 2013" *(ECF 41 at 3),* less than one month before the discovery deadline. Understandably, BNSF cites no authority for this slim argument. Finding this failure to communicate to be substantial justification would stand on its head Rule 37's intent to

provide a "strong inducement for disclosure of material that the disclosing party would expect to use as evidence...." *Rule 37(c) Advisory Committee Notes to 1993 Amendments.*

The next question is whether the untimely disclosure is harmless. Applying the factors identified above, the Court first finds that although Giard legitimately can claim some surprise at the late disclosure, the prejudice is not great. As Giard's briefing demonstrates, the argument BNSF raises here is not novel and has been considered in other cases both in this District and elsewhere. *ECF 43 at 6.* Giard is represented by a capable and experienced law firm which has already filed a 26-page brief opposing BNSF's summary judgment motion.

Other factors, however, suggest that the late disclosure was not harmless. Although the Court can permit Giard to conduct further discovery at BNSF's expense, "[d]isruption to the schedule of the court and other parties in [this] manner is not harmless." *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005). As the Ninth Circuit has observed,

> [i]n these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously

> by the parties, and the best way to encourage that is to enforce
> the deadlines. Parties must understand that they will pay a price
> for failure to comply strictly with scheduling and other orders,
> and that failure to do so may properly support severe sanctions
> and exclusions of evidence.

*Id.* at 1060. While the Court has no basis for concluding that the delay

here was in bad faith, it does appear that the delay was "willful"

because BNSF and its counsel certainly could have, and should have,

discussed this evidence in time to comply with the disclosure

requirements.

For these reasons, the Court concludes that the untimely

disclosures were not harmless, implicating Rule 37(c)(1)'s exclusionary

rule. But before excluding testimony as a sanction for a Rule 26

violation, the Court also must consider: (1) the public's interest in

expeditious resolution of litigation; (2) the Court's need to manage its

docket; (3) risk of prejudice to BNSF; (4) public policy favoring

disposition of cases on their merits; and (5) the availability of less

drastic sanctions. *See Rau v. State Farm Ins. Companies*, 2007 WL

7652826 (D. Mont. 2007) (citing *Wanderer v. Johnston*, 910 F.2d 652,

656 (9th Cir. 1990) and *Wendt v. Host International, Inc.*, 125 F.3d 806,

814 (9th Cir. 1997)).

The first two factors weigh heavily in favor of excluding these witnesses and avoiding further delay. The third and fourth factors weigh in favor of allowing the testimony to be considered. As to the fifth factor, the Court concludes that less drastic sanctions, while available, are not appropriate here because this is a situation that BNSF could have avoided with due and timely attention to issues in the case. Accordingly, after weighing these factors, the Court concludes that less drastic sanctions are inadequate and the automatic exclusion of Rule 37 should apply. Giard's motion to strike will be granted and the Court will strike from its consideration of BNSF's summary judgment motion the affidavits of William A. Osborn *(ECF 32-2)* Dr. Michael R. Jarrard *(ECF 32-14)*.

## III.  **BNSF'S MOTION FOR SUMMARY JUDGMENT**

### A.  **Parties' Arguments**

BNSF contends that Giard's claim for mismanagement under MCA § 39-2-703 is preempted by both the Railway Labor Act ("RLA") and the Federal Employer Liability Act ("FELA"). As to RLA preemption, BNSF argues that Giard's claim that BNSF mismanaged his return to work requires interpretation and application of the CBA,

and thus is preempted under the RLA. *BNSF's Br. in Support of Mot. for Summary Judgment (ECF 31) at 15.* As to FELA preemption, BNSF points out that Giard filed, and then later dismissed, a FELA claim that would have allowed him to seek the entire range of damages he seeks in this case (except punitive damages). *Id. at 28-29.* BNSF argues that because Giard still has a claim under the FELA available to him, his state-law mismanagement claim is preempted. *Id. at 31-32.*

In response, Giard argues that the right to be free from mismanagement is a state law created right independent from the CBA, and therefore his mismanagement claim is not subject to RLA preemption. *Giard's Br. in Opposition to BNSF's Mot. for Summary Judgment (ECF 39) at 11, 14-15.* As to FELA preemption, Giard argues that this case seeks damages and asserts negligent acts that are distinct from those asserted in the prior FELA claim. Giard argues that because FELA applies only to claims arising from a physical injury, and his claim here instead seeks redress for BNSF's alleged mismanagement of his return to work, FELA would provide no remedy and consequently does not preempt his mismanagement claim. *Id. at 20-24.*

In reply, BNSF argues that the substance of Giard's claim, essentially a dispute over medical fitness for duty, is either controlled by the CBA or requires the Court to consider and interpret the CBA, and is therefore preempted under the RLA. *BNSF's Reply (ECF 42) at 4-7.* As to FELA preemption, BNSF asserts that none of the damages Giard seeks in this case would have been incurred but for the May 2009 biceps tendon injury (forming the basis for the now-dismissed FELA action), and therefore the FELA provides Giard with an exclusive remedy and preempts his mismanagement claim. *Id. at 11.*

## B.   <u>Summary Judgment Standard</u>

Fed. R. Civ. P. 56(a) requires the court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Id.* at 587 (quotation omitted). In resolving a summary judgment motion, the evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

## C. Discussion

### 1. Railway Labor Act Preemption

Because the Court has stricken the affidavit of William A. Osborn, along with the attached excerpt from the CBA, and the affidavit of Dr. Michael R. Jarrard, there is no evidentiary basis to support RLA preemption. Accordingly, BNSF's motion for summary judgment should be denied to the extent it is based on RLA preemption.

### 2. Federal Employers' Liability Act Preemption

The FELA provides that employees of common-carrier railroads may recover for work-related injuries caused in whole or in part by their railroad-employer's negligence. *See* 45 U.S.C. § 51. In enacting the FELA, Congress undertook "to cover the subject of the liability of railroad companies to their employees injured while engaged in interstate commerce." *New York Cent. R. Co. v. Winfield*, 244 U.S. 147, 152 (1917) (quotation omitted). Thus, the FELA "'is comprehensive and also exclusive'" in respect of a railroad's liability for injuries suffered by its employees while engaging in interstate commerce...'" *Wildman v. Burlington N. R. Co.*, 825 F.2d 1392, 1395 (9th Cir.1987) (quoting *New York Cent. & H.R. R.R. v. Tonsellito*, 244 U.S. 360, 361-62 (1917); *see*

*also South Buffalo Ry. Co. v. Ahern*, 344 U.S. 367, 371 (1953)

("[S]upplanting a patchwork of state legislation with a nationwide

uniform system of liberal remedial rules, [the FELA] displaces any

state law trenching on the province of the Act").  The coverage of the

FELA is "defined in broad language, which has been construed even

more broadly."  *Atchison, Topeka & Santa Fe R.R. Co. v. Buell*, 480 U.S.

557, 561-62 (1987).

In *Counts v. Burlington Northern R. Co.*, a railroad employee

brought a state-law claim against the railroad for its alleged fraud in

inducing him to release his FELA claim.  896 F.2d 424, 426 (9th Cir.

1990).  The Ninth Circuit found that because a plaintiff may challenge

the validity of a release as part of a FELA claim, the employee's

independent state-law fraud claim was preempted by federal law.  *Id.*

at 426.  The court found that "[t]o permit independent state-law actions

for fraud in inducing FELA releases would lead to results that would

vary from state to state.  That we cannot allow."  *Id*. at 425.  Because

the plaintiff had "a cause of action under FELA available to him[,]" the

court held that he "may not bring an independent state law claim for

fraud in the inducement of a release."  *Id.*

In *Toscano v. Burlington Northern R. Co.*, this Court found that a claim based on the Montana common-law duty of good faith and fair dealing was preempted by the FELA. 678 F. Supp. 1477 (D. Mont. 1987). There, the plaintiff argued that the defendant railroad, a self-insurer for purposes of the FELA, should be subject to the common-law duty of good faith and fair dealing in its claim settlement practices, and that because the FELA does not specifically apply to such conduct, the duty imposed by state common-law is not preempted. The Court rejected this argument, stating that "[t]he rights and liabilities of an employee and employer subject to the provisions of the FELA depend upon the terms of the Act itself and applicable principles of common law, as interpreted and applied by the federal courts." *Id.* at 1479 (citing *Chesapeake & Ohio Ry. Co. v. Kuhn*, 284 U.S. 44 (1931)). Finding the state-law claim preempted by the FELA, the Court concluded:

> Employers subject to the terms of the FELA are protected, in a sense, from the nuances of law of the several states. The desire for uniformity which prompted Congress to enact the FELA precludes Toscano from imposing liability upon the Burlington Northern for actions relating to an FELA claim, when the liability is predicated upon a duty having its genesis in state law.

*Id.*

Under the above stated authority, Giard's claim, predicated under Montana statutory law, that BNSF mismanaged his return to work following his on-the-job injury is preempted by the FELA. There is no dispute that the reason Giard left work in 2009 was due to a physical injury of the type for which the FELA provides the exclusive remedy. Giard was therefore entitled to file an FELA claim, as he did in 2011, to pursue compensatory damages causally related to his injury. His state-law claim that BNSF "mismanaged" his return to work is so closely related to his FELA injury that it falls within the ambit of the federal Act. Because Giard has a remedy under the FELA available to him, his independent state law claim is preempted. *See Counts*, 896 F.2d at 426.

Giard argues that the economic, emotional distress, and punitive damages he seeks in his mismanagement case are distinct from those he sought in the FELA case and are therefore recoverable under a state law theory. The Court is unpersuaded. Assuming Giard established liability under the FELA, he would be entitled to all economic damages he incurred from the date of his injury in May 2009 until his return to work in April 2012. Giard cannot contend otherwise – it has

consistently been BNSF's position that Giard's FELA injury continued to preclude him from working until the spring of 2012.

But Giard argues that his mismanagement claim should go forward because he could not "recover in the FELA claim the emotional distress caused by BNSF's mismanagement in imposing the restrictions on him, nor punitive damages." *ECF 39 at 24.* Again, this argument is unpersuasive. Damages for mental or emotional injuries are cognizable under the FELA, *Taylor v. Burlington Northern R.R.*, 787 F.2d 1309, 1313, 1317 (9th Cir. 1986), but whether and to what extent Giard could obtain such damages does not control the preemption analysis. *See Counts*, 896 F.2d at 426 (FELA preemption applies "regardless of whether federal law provides the remedy [the plaintiff] seeks"). And the fact that Giard claims punitive damages here has no bearing on whether the FELA applies or whether it preempts his state-law claim – punitive damages are unavailable under the FELA and the Ninth Circuit has held that a plaintiff may not resort to independent state law claims to obtain them.[2] *See Wildman*, 825 F.2d at 1395.

_____

[2]The same reasoning applies to Mary Giard's loss of consortium claim. *See Kelsaw v. Union Pac. R. Co.*, 686 F.2d 819, 820 (9th Cir. 1982) ("spouse of an injured railroad employee may not sue for loss of consortium under FELA").

Finally, Giard cites the Montana Supreme Court's decision in *Reidelbach v. Burlington N. & Santa Fe Ry. Co.*, 60 P.3d 418 (Mont. 2002) to support his position that BNSF's conduct in overseeing his return to work should be treated as separate and independent from the 2009 physical injury, and is thus sanctionable under state law. Giard's reliance on *Reidelbach* is misplaced. First, the application of the FELA is a matter of federal law. *See Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165 (2007) ("substantively FELA actions are governed by federal law"); *see also Urie v. Thompson*, 337 U.S. 163, 174 (1949) ("Federal decisional law formulating and applying the concept governs"). Second, *Reidelbach* concerned state law claims based on BNSF's alleged bad faith claims handling practices, not "mismanagement" of an injury claim as is asserted here. And, dissimilar to the present case, Reidelbach had no other legal recourse. *Compare Sinclair v. Burlington Northern and Santa Fe Ry. Co.,* 200 P.3d 46 (Mont. 2008) (rejecting as preempted fraud and related claims for punitive damages).

In addition, permitting an independent state-law action that challenges BNSF's conduct in returning Giard to work following an injury would impermissibly "lead to results that would vary from state

to state[,]" (*Counts,* 896 F.2d at 425) as many FELA plaintiffs in Montana could conceivably assert "mismanagement" claims in relation to injury claims. Federal law must control so that the FELA may be given the "uniform application throughout the country essential to effectuate its purposes." *Id.* (quoting *Dice v. Akron, Canton & Youngstown R.R. Co.*, 342 U.S. 359, 361 (1952)). Giard's mismanagement claim is preempted by the FELA, and BNSF thus is entitled to summary judgment.

## IV.  CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiff's Motion to Strike *(ECF 37)* is GRANTED; and

IT IS RECOMMENDED that Defendants' Motion for Summary Judgment *(ECF 30)* be GRANTED, Homer Giard's claim against BNSF be DISMISSED, and Mary Giard's loss of consortium claim be DISMISSED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Order and Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the Order and Findings

and Recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 6th day of January, 2014.

**/s/ Carolyn S. Ostby**
United States Magistrate Judge